Reuben D. Nathan, Esq. (SBN 208436)
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

Ross Cornell, Esq. (SBN 210413)
**LAW OFFICES OF ROSS CORNELL, APC**
P.O. Box 1989 #305
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

Attorneys for Plaintiff, STEPHANIE ST. MARY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE ST. MARY, on behalf of herself and all similarly situated persons,<br><br>        Plaintiff,<br><br>v.<br><br>ALLSIDES TECHNOLOGIES, INC., a Delaware corporation,<br><br>        Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1) Cal. Penal Code § 631<br>2) 18 U.S.C. § 2511(1)(a)<br>3) Cal. Bus. & Prof. Code § 17200, *et seq.*<br>4) Cal. Constitution Art. I § 1<br>5) Intrusion Upon Seclusion<br>6) Unjust Enrichment |

1

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff STEPHANIE ST. MARY ("Plaintiff") files this class action complaint on behalf of herself and all others similarly situated (the "Class Members") against Defendant ALLSIDES TECHNOLOGIES, INC., a Delaware corporation ("Defendant" or "AllSides"). Plaintiff brings this action based upon personal knowledge of the facts pertaining to herself, and on information and belief as to all others, by and through the investigation of undersigned counsel.

## I.      NATURE OF THE ACTION

1.      This is a class action lawsuit brought on behalf of all California residents who have accessed and used www.allsides.com (the "Website"), a website that Defendant provides for public access and use.

2.      During her use of the Website, Plaintiff navigated to multiple pages on the Website, unaware that Defendant was causing and permitting Third Parties to intercept the content of her communications and reveal her content interests.

3.      Defendant caused the interception of the contents of Plaintiff's communications with the Website, including the page URLs identifying what she was browsing and/or the referrer URLs reflecting navigation, which were transmitted to the Third Parties during the page-load process itself.

4.      As set forth in the Specific Allegations section of this Complaint below, Defendant surreptitiously embeds and operates third-party tracking technologies on the Website that intercept the contents of users' electronic communications, including the page URLs reflecting in human readable terms what users are browsing, in real time and without notice or consent. Defendant intentionally deploys these technologies to accomplish its commercial objectives, including identity resolution, cross-session behavioral profiling, audience segmentation, and the monetization of users' browsing activity through targeted advertising and real-time bidding.

5.      Defendant deploys these interception technologies in violation of the California Invasion of Privacy Act, Cal. Penal Code § 631, and the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a). Defendant has done so from prior to the beginning of the class

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

period in this case and continuously through to today and ongoingly.

6. Plaintiff personally used the Website during the class period and preserved an HTTP archive file (commonly known as a HAR file) of her own browsing session. Counsel caused a technical investigation to be conducted that replicated URLs and user flows presented in Plaintiff's HAR file and that documented the third-party tracking transmissions described in this Complaint. The figures and screenshots reproduced below are from that investigation and are included herein as illustrative examples of how the Website's tracking technologies operated when Plaintiff visited the Website.

## II. GENERAL ALLEGATIONS

7. A pixel tracker, also known as a web beacon, is a tracking mechanism embedded in a website that monitors user interactions. It typically appears as a small, transparent 1x1 image or a lightweight JavaScript snippet that activates when a webpage is loaded, or a user performs a tracked action.

8. When triggered, the pixel causes the user's browser to transmit data to third-party servers, including the contents of the user's communications with the Website such as page URLs identifying what the user is browsing and referrer URLs reflecting navigation.

9. When users visit the Website, Defendant causes tracking technologies to be embedded in visitors' browsers. These include, but are not limited to, the following:

- The Bombora Tracker
- The Google Analytics 4 Tracker

10. The third parties who operate the above-listed trackers use the intercepted contents of users' communications collected via the Website for their own independent purposes tied to broader advertising ecosystems, profiling, and data monetization strategies, which go beyond Defendant's direct needs, for their own financial gain. The above-listed trackers are referred to herein collectively as the "Trackers" and their operators below are referred to collectively as the "Third Parties."

/ / /

3

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

11. The Trackers are operated by Bombora Inc. (also branded as Madison Logic, as to the Bombora tracker) and Google LLC (as to the Google Analytics 4 tracker).

12. Defendant knowingly embeds and deploys the Trackers on the Website and configures them to execute automatically within users' browsers upon page load and navigation. As a result, Defendant causes the interception and transmission of the contents of users' electronic communications with the Website to servers controlled by the Third Parties. Defendant's conduct is intentional and coordinated, as the Trackers operate pursuant to Defendant's deliberate configuration and are not necessary to render the Website's core content or functionality.

13. The third-party tracking code executed contemporaneously with each page load and navigation event initiated by Plaintiff's browser. As the browser initiated each HTTP request to retrieve Website content, embedded scripts automatically caused the interception and transmission of the contents of users' communications with the Website to remote third-party endpoints during the page-load process itself, before the requested page finished rendering and without any user interaction or authorization.

14. Plaintiff and the Class Members did not consent to the installation, execution, embedding, or injection of the Trackers on their devices and did not consent to the contents of their communications with the Website being intercepted, captured, or transmitted to third parties for advertising, analytics, or monetization purposes.

15. Generalized references herein to users, visitors and consumers expressly include Plaintiff and the Class Members.

### III. PARTIES

16. Plaintiff STEPHANIE ST. MARY is a California citizen residing in Los Angeles County, California, and has an intent to remain there. Plaintiff was in California when she visited the Website, which occurred during the class period including but not limited to on May 14, 2026. The allegations set forth herein are based on the Website as configured when Plaintiff visited it.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

17. Defendant ALLSIDES TECHNOLOGIES, INC. is a Delaware corporation that owns, operates, and controls the Website, an online news-aggregation and media-bias rating platform through which AllSides publishes news aggregation, headline roundups, and media-bias analyses available to readers nationwide.

18. AllSides Technologies, Inc. maintains its principal place of business in Denver, Colorado, and operates the Website nationwide, including in California. Through the Website and related digital platforms, AllSides conducts national news-aggregation, media-bias rating, and digital publishing activities and serves readers in California, including in this District.

## IV.    JURISDICTION AND VENUE

19. Defendant AllSides Technologies, Inc. is subject to specific personal jurisdiction in this District. Defendant has purposefully directed its commercial activities to California; the claims asserted in this Complaint arise out of and relate to those California-directed activities; and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

20. Defendant operates the Website on a nationwide basis for a national consumer audience and purposefully and continuously serves California consumers. Defendant aggregates and publishes news coverage that includes California political and policy issues, applies its media-bias rating methodology to California-published news outlets, and markets the Website and its related services to California readers, schools, educators, and students. Plaintiff is a California citizen who accessed the Website from her California residence, and the substantial harm alleged in this Complaint occurred in California.

21. Defendant's published Privacy Notice expressly addresses the rights of California residents and is structured to comply with California consumer-protection law. The Privacy Notice directs California residents to a separate notice page tailored to California consumers; provides the opt-out mechanism mandated under the California Consumer Privacy Act; honors the Global Privacy Control opt-out signal; and includes

5

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

a separate protection against the knowing sale of personal information of California minors under sixteen years of age. These California-specific provisions are evidence that Defendant's commercial conduct is purposefully directed at, and subject to, California's consumer-protection regime.

22. Defendant deliberately contracts with California-headquartered service providers to deliver analytics and advertising on the Website. Defendant's Privacy Notice identifies Google LLC as one of Defendant's analytics service providers. Google LLC is a Delaware limited liability company with its principal place of business in Mountain View, California. Defendant's deployment of Google Analytics causes Plaintiff's and California Class Members' browsing data to be routed to and processed by Google's California-based infrastructure on every page load. By selecting a California-headquartered analytics provider to operate on the Website, Defendant purposefully avails itself of California's commercial infrastructure to monetize California user data.

23. Defendant additionally deploys Bombora Inc. on the Website. Bombora Inc. is a registered California data broker. By deploying a registered California data broker to collect, sell, and license intent data derived from California Website users' browsing activity, Defendant directly engages with California's statutory regime governing the sale and brokering of California consumer data and avails itself of the California-regulated data-brokerage market to generate revenue.

24. Defendant additionally contracts directly with California schools, educators, and students through its Mismatch by AllSides educational platform. Defendant's Privacy Notice contemplates the registration of schools and educators for paid School Memberships, the collection of personal information from teachers and students (including names, school information, demographic information, and grade-level information), and the operation of platform services within classrooms. Defendant offers these services to California schools, California educators, and California students. This direct service relationship with California institutions and California minors further

6

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

establishes Defendant's purposeful availment of the California market.

25. The claims asserted in this Complaint arise directly from Defendant's California-directed conduct: Defendant caused the interception of Plaintiff's electronic communications while Plaintiff was in California, transmitted the substantive contents of those communications to third-party tracking infrastructure operated in part by California-headquartered service providers, and profited from the sale, brokerage, and commercial use of California consumer browsing data. The exercise of personal jurisdiction in this District over a defendant that has deliberately structured its commercial operations to capture and monetize California consumer browsing data comports with traditional notions of fair play and substantial justice.

26. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under federal law, specifically 18 U.S.C. § 2520, which provides a civil cause of action for violations of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a).

27. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

28. This Court also has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because there are more than 100 putative Class Members, the amount in controversy exceeds $5,000,000 in the aggregate exclusive of interest and costs, and minimal diversity exists because Plaintiff is a citizen of California and Defendant is a citizen of Delaware (its state of incorporation) and Colorado (its principal place of business).

29. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) because (1) Defendant operates the Website that serves California residents in this District; (2) a substantial part of the events or omissions giving rise to the claims occurred within this District, including Plaintiff's California-located use of the Website

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

from her Los Angeles County residence; (3) Plaintiff resides in this District; and (4) Defendant derives substantial revenue from California consumers in this District.

## V.    FEDERAL AND STATE PRIVACY LAWS

### 1.    The California Invasion of Privacy Act (CIPA)

30.    The California Invasion of Privacy Act (CIPA) is a legislative measure designed to safeguard the privacy rights of California residents by prohibiting unauthorized wiretapping and eavesdropping on private communications. The California Legislature recognized the significant threat posed by emerging surveillance technologies, stating that "the development of new devices and techniques for the purpose of eavesdropping upon private communications ... has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society" (Cal. Penal Code § 630).

31.    Despite predating the Internet, CIPA has been applied to email and other Internet communications so long as that application is consistent with the statutory text and purpose. Section 631(a) reaches the interception of email content and online communications and consent under CIPA must be obtained before the interception occurs.

32.    CIPA's text and history confirm that the Legislature intended to protect core privacy rights, as reflected in § 630's declaration that the statute was enacted to protect the right of privacy of the people of this state. CIPA codifies a substantive right to privacy such that the violations of CIPA alleged herein, which implicate traditional interests in personal privacy, constitute concrete injuries sufficient to establish Article III standing.

33.    Individuals may pursue legal action against violators of Cal. Penal Code § 631 and are entitled to seek $5,000 in statutory penalties per violation. Cal. Penal Code § 637.2(a)(1).

### 2.    The Federal Wiretap Act

34.    The Federal Wiretap Act, enacted as Title III of the Omnibus Crime Control

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

and Safe Streets Act of 1968 and amended by the Electronic Communications Privacy Act (ECPA) of 1986, prohibits the intentional interception of wire, oral, or electronic communications. Congress enacted the statute to safeguard the privacy of communications against unauthorized interception, recognizing that unchecked surveillance technology poses a fundamental threat to individual liberty.

35. The Federal Wiretap Act applies to communications transmitted over the Internet. The 1986 ECPA amendments expressly extended the statute's protections to electronic communications as defined under 18 U.S.C. § 2510(12) to include "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." That includes data transmitted over the internet such as the contents of web browsing activity via HTTP requests as alleged here.

36. A person whose electronic communications are intercepted in violation of 18 U.S.C. § 2511 may bring a civil action pursuant to 18 U.S.C. § 2520(a). Available relief includes the greater of actual damages or statutory damages of $100 per day for each day of violation or $10,000, whichever is greater, plus punitive damages in appropriate cases, reasonable attorney's fees, and other litigation costs reasonably incurred.

## VI.    SPECIFIC ALLEGATIONS

37. During her use of the Website, and as reflected in her HAR file, Plaintiff navigated to the following URLs, unaware that Defendant was causing and permitting Third Parties to intercept the content of her communications:

- https://www.allsides.com/story/abortion-annual-march-life-comes-trump-admin-targets-controversial-abortion-research;
- https://www.allsides.com/story/abortion-hhs-restores-title-x-funding-abortion-providers-trump-says-he-didnt-know;

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

- https://www.allsides.com/story/healthcare-fda-approves-new-generic-version-abortion-pill-mifepristone-drawing-gop-criticism;

- https://www.allsides.com/story/criminal-justice-minnesotas-welfare-scam-racism-grift-or-political-mudslinging.

38.    Plaintiff alleges on information and belief that the tracking mechanisms described below operated on the Website during Plaintiff's visits to the URLs identified above and intercepted the substantive contents of Plaintiff's electronic communications with the Website, including the article URLs and article titles identifying the topics Plaintiff was reading.

**1.    The Bombora Tracker**

39.    Defendant embedded and deployed a Bombora tracking pixel on the Website, operated by Bombora Inc. through its Madison Logic data-management and audience-segmentation infrastructure at ml314.com. The Bombora pixel fires automatically when users load content pages on the Website. The pixel transmits the full URL of the loaded page to Bombora's servers in plain, human-readable text, alongside persistent identifiers that link the transmission to a profile maintained by Bombora.

40.    When Plaintiff navigated to https://www.allsides.com/story/abortion-annual-march-life-comes-trump-admin-targets-controversial-abortion-research, https://www.allsides.com/story/abortion-hhs-restores-title-x-funding-abortion-providers-trump-says-he-didnt-know,    https://www.allsides.com/story/healthcare-fda-approves-new-generic-version-abortion-pill-mifepristone-drawing-gop-criticism,    and https://www.allsides.com/story/criminal-justice-minnesotas-welfare-scam-racism-grift-or-political-mudslinging, the Bombora pixel transmitted outbound requests to Bombora that contained the full URLs of those articles in human-readable form together with a persistent Bombora identifier in the same outbound requests. The Bombora response on each request set a Bombora visitor-identifier cookie that does not expire until May 2027.

41.    Figure 1 is a network capture showing an outbound transmission to

10

Bombora during the load of AllSides's article "Annual 'March for Life' Comes as Trump Admin Targets Controversial Abortion Research." The transmission carries the full article URL in plain, human-readable text, in two named parameters within the same outbound request, together with a persistent Bombora visitor identifier.

**<u>Figure 1</u>**



42. Figure 2 is a network capture showing an outbound transmission to Bombora during the load of AllSides's article "Minnesota's Welfare Scam: 'Racism, Grift', or 'Political Mudslinging.'" The transmission carries the full article URL, which itself includes descriptive terms identifying the article's subject, in plain, human-readable text in two named parameters within the same outbound request, together with the same persistent Bombora visitor identifier transmitted on the prior article page during the same browsing session.

///

///

11

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**Figure 2**

43.     Bombora's servers returned responses to each of the Bombora requests, confirming that Bombora received and processed the transmitted data in real time, during the transmission of Plaintiff's communications with the Website. Bombora additionally embedded a base64-encoded copy of the article URL within a persistent Bombora cookie stored in Plaintiff's browser, persisting the sensitive content identifier within the browser's cookie storage itself.

44.     Bombora Inc. and its operators used the intercepted content of Plaintiff's communications with the Website concerning sensitive content, including the article URLs identifying the topics Plaintiff was reading, to build behavioral profiles and to enable audience segmentation, targeted advertising, and the sale of intent data to advertisers in the digital advertising marketplace. Bombora Inc. operates as a registered California data broker.

45.     Bombora Inc. is not a party to the communications between Plaintiff and the Website; it is a third-party interceptor that surreptitiously duplicated and captured those communications as they occurred. Defendant did not obtain Plaintiff's consent before causing Bombora to intercept the contents of Plaintiff's communications with the

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Website. These acts constitute violations of Cal. Penal Code § 631 and 18 U.S.C. § 2511(1)(a).

### 2.     The Google Analytics 4 Tracker

46.     Defendant embedded and deployed a Google Analytics 4 tracking pixel on the Website, operated by Google LLC through its Google Analytics measurement platform. The Google Analytics 4 pixel fires automatically when users load content pages on the Website. The pixel transmits the full URL and title of the loaded page to Google's servers in plain, human-readable text, alongside persistent identifiers that link the transmission to a profile maintained by Google and, where the user is signed into a Google account, to that user's Google account identity.

47.     When Plaintiff navigated to https://www.allsides.com/story/abortion-annual-march-life-comes-trump-admin-targets-controversial-abortion-research, https://www.allsides.com/story/abortion-hhs-restores-title-x-funding-abortion-providers-trump-says-he-didnt-know,     https://www.allsides.com/story/healthcare-fda-approves-new-generic-version-abortion-pill-mifepristone-drawing-gop-criticism,     and https://www.allsides.com/story/criminal-justice-minnesotas-welfare-scam-racism-grift-or-political-mudslinging, the Google Analytics 4 pixel transmitted outbound requests to Google that contained the full URLs and full titles of those articles in human-readable form together with a persistent Google Analytics visitor identifier and Google account identity cookies in the same outbound requests.

48.     Figure 3 is a network capture showing an outbound transmission to Google during the load of AllSides's article "HHS Restores Title X Funding to Abortion Providers, Trump Says He Didn't Know." The transmission carries the full article URL and the full article title in plain, human-readable text, together with a persistent Google Analytics visitor identifier and Google account identity cookies.

/ / /

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**<u>Figure 3</u>**

49.    Figure 4 is a network capture showing an outbound transmission to Google during the load of AllSides's article "FDA Approves New Generic Version of Abortion Pill Mifepristone, Drawing GOP Criticism." The transmission carries the full article URL and the full article title in plain, human-readable text, together with the same persistent Google Analytics visitor identifier and Google account identity cookies transmitted on the prior article page during the same browsing session.

/ / /

/ / /

/ / /

14

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**Figure 4**

50.     Google's servers returned responses to each of the Google Analytics 4 requests, confirming that Google received and processed the transmitted data in real time, during the transmission of Plaintiff's communications with the Website. Each transmission carried a parameter indicating that personalized tracking was active and a Google Consent Mode signal value indicating that no user consent restriction was applied to the data collection.

51.     Google LLC and its operators used the intercepted content of Plaintiff's communications with the Website concerning sensitive content, including the article URLs and article titles identifying the topics Plaintiff was reading, to build behavioral profiles, to associate Plaintiff's browsing with her Google account identity, and to enable audience segmentation, targeted advertising, and real-time bidding through which advertisers pay measurable clearing prices for access to identified audiences.

52.     Google LLC is not a party to the communications between Plaintiff and the Website; it is a third-party interceptor that surreptitiously duplicated and captured those communications as they occurred. Defendant did not obtain Plaintiff's consent before causing Google Analytics 4 to intercept the contents of Plaintiff's communications with the Website. These acts constitute violations of Cal. Penal Code § 631 and 18 U.S.C. §

15

2511(1)(a).

## VII.  CLASS ALLEGATIONS

53.    Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class" or "Class Members") defined as follows:

> All persons within California whose electronic communications with the Website, including the URL contents of their HTTP requests to the Website were intercepted by one or more Trackers between May 14, 2025 and the present.

54.    NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class Members can be ascertained by the records maintained by Defendant.

55.    COMMONALITY: Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions include but are not limited to:

- Whether Defendant configured the Website to transmit the URL contents of visitors' HTTP requests to the Trackers;
- Whether the URL contents of those requests constitute "contents" of electronic communications within the meaning of Cal. Penal Code § 631(a) and 18 U.S.C. § 2510(8);
- Whether Defendant's conduct constitutes interception of electronic communications in violation of Cal. Penal Code § 631(a);
- Whether Defendant's conduct constitutes intentional interception of electronic communications in violation of 18 U.S.C. § 2511(1)(a);
- Whether Defendant's conduct constitutes an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200;
- Whether Plaintiff and Class Members are entitled to statutory damages;
- Whether Class Members are entitled to injunctive relief;
- Whether the Defendant's conduct violates the California Constitution;

16

- Whether the Defendant's conduct constitutes an intrusion upon seclusion;
- Whether Class Members are entitled to disgorgement of data unlawfully obtained; and
- Whether Class Members are entitled to restitution.

56.    TYPICALITY: As a person who visited the Website and whose URL contents were intercepted by the Trackers, Plaintiff is asserting claims that are typical of the Class Members. Plaintiff's experience with the Trackers is typical to Class Members.

57.    ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the Class or whose inclusion would otherwise be improper are excluded.

58.    SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation also presents a potential for inconsistent or contradictory judgments.

## VIII.  FIRST CAUSE OF ACTION

### Violations of Cal. Penal Code § 631

### By Plaintiff and the Class Members Against Defendant

59.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

60.    Plaintiff brings this cause of action on behalf of herself and the Class.

61.    California Penal Code § 631(a) prohibits any person from willfully and without the consent of all parties to the communication reading, or attempting to read, or learning the contents or meaning of any message, report, or communication while the same is in transit, and from using or attempting to use, in any manner or for any purpose,

17

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

any information so obtained.

62.    The full URLs of Plaintiff's and Class members' HTTP requests to the Website constitute the "contents" of those communications within the meaning of § 631(a). As described in the preceding tracker-specific allegations, the Trackers received human readable copies of URL strings in the same HTTP request or response in which the Website servers received it, while that communication was in transit between Plaintiff's browser and the Website.

63.    Defendant intentionally configured its website to transmit Plaintiff's and Class members' URL contents to the Trackers, itself received and used those URL contents for audience segmentation and ad targeting, and permitted the Trackers to use that information for user profiling and targeted advertising. The Trackers are third parties to the communications between Plaintiff and the Website. Plaintiff and Class members did not consent to interception of the contents of their communications by any Tracker, and no other exception to § 631(a) applies.

64.    Each interception constitutes a separate violation of § 631(a). Plaintiff and the Class are entitled to recover the greater of actual damages or $5,000 per violation pursuant to Cal. Penal Code § 637.2(a)(1), injunctive relief, and such other relief as the Court deems just and proper.

## IX.    SECOND CAUSE OF ACTION

### Violations of 18 U.S.C. § 2511(1)(a)

### By Plaintiff and the Class Members Against Defendant

65.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

66.    Plaintiff brings this cause of action on behalf of herself and the Class.

67.    18 U.S.C. § 2511(1)(a) prohibits any person from intentionally intercepting any wire, oral, or electronic communication. The Federal Wiretap Act defines "contents" to include any information concerning the substance, purport, or meaning of a communication. 18 U.S.C. § 2510(8).

18

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

68.    The full URLs of Plaintiff's and Class members' HTTP requests to the Website are "contents" of electronic communications within the meaning of 18 U.S.C. § 2510(8). Those URLs communicate the substance and meaning of Plaintiff's and Class members' browsing. As described in the preceding tracker-specific allegations, the Trackers intercepted URL contents in real time, in the same HTTP request or response in which the Website's servers received them, while those communications were in transit.

69.    Defendant intentionally configured its website to transmit Plaintiff's and Class members' URL contents to each Tracker, itself received and used those URL contents for audience segmentation and ad targeting, and permitted each Tracker to use that information for user profiling and targeted advertising. The Trackers are third parties to the communications between Plaintiff and the Website. Plaintiff and Class members did not consent to this interception.

70.    Plaintiff and the Class are entitled to relief under 18 U.S.C. § 2520, including the greater of actual damages plus any profits made by Defendant through the interception, or statutory damages of $100 per day per violation or $10,000, whichever is greater, together with punitive damages, reasonable attorney's fees, and litigation costs.

## X.    THIRD CAUSE OF ACTION

### Violations of Business & Professions Code § 17200

### By Plaintiff and the Class Members Against Defendant

71.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

72.    Plaintiff brings this cause of action on behalf of herself and the Class.

73.    California Business and Professions Code § 17200 prohibits any unlawful, unfair, or fraudulent business act or practice. Defendant's conduct constitutes both an unlawful and an unfair business practice.

74.    Defendant's conduct is unlawful. By facilitating the interception of the

19

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

contents of Plaintiff's and Class members' electronic communications without consent, Defendant violated California Penal Code § 631(a) and 18 U.S.C. § 2511(1)(a). Each statutory violation constitutes a predicate unlawful business act or practice under § 17200.

75.    Defendant's conduct is also unfair. Defendant covertly transmitted Plaintiff's and Class members' URL contents to third-party Trackers for commercial monetization without disclosure, authorization, or compensation. The harm to Plaintiff and the Class including but not limited to the interception and commercial exploitation of sensitive personal information and the financial value thereof is substantial, is not outweighed by any legitimate countervailing benefit, and could not reasonably have been avoided by Plaintiff or Class members.

76.    Plaintiff and Class members suffered injury in fact and lost money or property as a result of Defendant's conduct. Browsing data identifying the specific content a user views, including browsing URLs of the kind intercepted here, has recognized and quantifiable economic value in the digital advertising marketplace. Each Tracker enabled by Defendant used that intercepted URL content to build behavioral profiles and to participate in real-time bidding auctions in which advertisers pay measurable clearing prices for access to audiences identified by precisely this kind of browsing activity.

77.    Plaintiff and Class members provided their browsing data as implicit consideration for access to the Website, a data-for-services exchange that was not disclosed and to which they did not consent. Defendant and the Trackers are designed to and on information and belief did capture the economic benefit of that exchange, in the form of advertising revenue and RTB clearing prices generated by the Trackers' use of users' intercepted URL data, without compensating Plaintiff or Class members. Plaintiff and Class members were thereby deprived of the economic value of their data and of the full value of a privacy-protective browsing experience they reasonably expected and would have bargained for had the exchange been disclosed.

20

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

78.     Plaintiff and the Class are entitled to injunctive relief prohibiting Defendant from continuing its unlawful and unfair practices, restitution of monies acquired by Defendant through those practices, and reasonable attorney's fees pursuant to California Code of Civil Procedure § 1021.5.

## XI.     FOURTH CAUSE OF ACTION

### Violation of the California Constitution, Article I, Section 1

### By Plaintiff and the Class Members Against Defendant

79.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

80.     Plaintiff brings this cause of action on behalf of herself and the Class.

81.     Article I, Section 1 of the California Constitution provides that privacy is among the inalienable rights of all people in California. To state a claim for violation of the constitutional right to privacy, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy.

82.     Plaintiff and Class Members have a legally protected privacy interest in the contents of their electronic communications with the Website, including the specific page URLs reflecting their browsing activity. California law recognizes a legally protected privacy interest in personal browsing activity, particularly when that activity is covertly intercepted by commercial third parties for advertising and profiling purposes without disclosure or consent.

83.     Plaintiff and Class Members had a reasonable expectation of privacy in the contents of their electronic communications with the Website. A reasonable person visiting the Website does not expect that the specific pages they browse will be covertly transmitted to multiple separate third-party commercial tracking companies in real time, linked to persistent cross-session user profiles, and used for advertising targeting, behavioral analytics, and commercial monetization.

84.     Defendant's conduct constitutes a serious invasion of that privacy. By

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

deliberately embedding and configuring two third-party tracking technologies on the Website, Defendant caused the real-time, covert interception of the URL contents of Plaintiff's and Class Members' electronic communications and their transmission to third parties where they were linked to persistent cross-session profiles and used for commercial advertising and analytics purposes without Plaintiff's knowledge or consent. The severity of the invasion is heightened by the nature of the website, the sensitivity of the content browsed, the persistent and cross-platform nature of the identifiers used, and the commercial exploitation of the intercepted data.

85. As a result of Defendant's invasion of their privacy, Plaintiff and Class Members have suffered harm, including loss of privacy, loss of control over their personal information, and the unauthorized commercial exploitation of their browsing activity. Plaintiff and the Class seek injunctive relief, nominal damages, and all other relief authorized by law.

## XII.    FIFTH CAUSE OF ACTION

### Intrusion Upon Seclusion

### By Plaintiff and the Class Members Against Defendant

86. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

87. Plaintiff brings this cause of action on behalf of herself and the Class.

88. The common law tort of intrusion upon seclusion requires: (1) an intentional intrusion, physically or otherwise, into a place, conversation, or matter in which the plaintiff has a reasonable expectation of privacy; and (2) that the intrusion would be highly offensive to a reasonable person.

89. Defendant intentionally intruded into Plaintiff's and Class Members' electronic communications with the Website by deliberately embedding third-party tracking technologies that intercepted the URL contents of those communications in real time and transmitted them to third parties without Plaintiff's knowledge or consent. Plaintiff had a reasonable expectation of privacy in the contents of those

22

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

communications.

90.    The intrusion is highly offensive to a reasonable person. Defendant covertly deployed tracking technologies that captured the specific content Plaintiff was browsing and transmitted it to multiple third-party commercial entities for advertising targeting and behavioral profiling. The covert and non-consensual nature of the interception, the nature of the Website and the sensitivity of the content browsed, the commercial exploitation of the intercepted browsing activity for advertising and data analytics purposes, and the use of persistent cross-session identifiers to build comprehensive user profiles without disclosure all render the intrusion highly offensive to a reasonable person.

91.    As a result of Defendant's intrusion upon their seclusion, Plaintiff and Class Members have suffered harm, including loss of privacy, emotional distress, and the unauthorized exploitation of their personal information. Plaintiff and the Class seek compensatory damages, nominal damages, injunctive relief, and all other appropriate relief.

## XIII.  SIXTH CAUSE OF ACTION

### Unjust Enrichment

### By Plaintiff and the Class Members Against Defendant

92.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

93.    Plaintiff brings this cause of action on behalf of herself and the Class.

94.    Unjust enrichment requires: (1) a benefit conferred on the defendant; (2) at the expense of the plaintiff; and (3) circumstances that make it inequitable for the defendant to retain the benefit without compensating the plaintiff.

95.    Defendant received a benefit by permitting third parties to deploy their tracking technologies on the Website. In exchange for allowing these third parties to intercept and collect the URL contents of visitors' communications with the Website, Defendant received monetary compensation, data licensing benefits, promotional

23

support, or other commercial value. Defendant's arrangement with these tracking operators enabled it to offer analytics, retargeting, and advertising services that generated commercial revenue and business value.

96.     Defendant received this benefit at Plaintiff's and Class Members' expense. Plaintiff's and Class Members' browsing data constitutes personal property with recognized economic value in the digital advertising marketplace. By intercepting the URL contents of Plaintiff's communications and transmitting them to third-party trackers, Defendant and its tracking partners extracted the commercial value of that data without compensation. Plaintiff and Class Members also suffered the loss of control over their personal information, which has recognized economic value as a privacy-protective property interest.

97.     It is inequitable for Defendant to retain the benefits of its data-for-services arrangement without compensating Plaintiff and Class Members whose browsing activity was the source of that commercial value. Defendant's concealment of the tracking arrangement and its failure to obtain Plaintiff's and Class Members' informed consent render retention of those benefits unjust.

98.     Plaintiff and the Class seek restitution and disgorgement of all amounts by which Defendant was unjustly enriched at Plaintiff's and Class Members' expense.

## XIV.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for the following:

1. An order certifying the Class, naming Plaintiff as Class representative, and naming Plaintiff's attorneys as Class counsel;

2. An order declaring that Defendant's conduct violates Cal. Penal Code § 631(a), 18 U.S.C. § 2511(1)(a), Cal. Bus. & Prof. Code § 17200, et seq., Article I, Section 1 of the California Constitution, and the common law prohibition against intrusion upon seclusion;

3. An order enjoining Defendant from continuing the conduct alleged herein;

24

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

4. Statutory damages pursuant to Cal. Penal Code § 637.2(a)(1) of $5,000 per violation;

5. Statutory damages pursuant to 18 U.S.C. § 2520 of the greater of actual damages plus any profits made by Defendant through the violation, or $100 per day per violation or $10,000, whichever is greater;

6. Punitive damages pursuant to 18 U.S.C. § 2520;

7. Restitution pursuant to Cal. Bus. & Prof. Code § 17200, et seq.;

8. Nominal damages and injunctive relief for violation of Article I, Section 1 of the California Constitution;

9. Compensatory and nominal damages for intrusion upon seclusion;

10. Restitution and disgorgement of all amounts by which Defendant was unjustly enriched at Plaintiff's and Class Members' expense;

11. Prejudgment interest;

12. Reasonable attorney's fees and costs; and

13. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action and issues so triable.

Respectfully submitted,

Dated: July 14, 2026        **NATHAN & ASSOCIATES, APC**

By: */s/ Reuben D. Nathan*
Reuben D. Nathan
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

/ / /

/ / /

25

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**LAW OFFICES OF ROSS CORNELL, APC**
Ross Cornell, Esq. (SBN 210413)
P.O. Box 1989 #305
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

*Attorneys for Plaintiff and the Putative Class*

26

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED